DIETZ, Judge.
Respondent appeals the trial court's order terminating her parental rights to her son Dylan[1] . Because we find that the trial court did not err in terminating Respondent's parental rights on the ground of neglect and did not abuse its discretion in determining that termination was in Dylan's best interests, we affirm the trial court's order.
Facts and Procedural History
On 16 February 2016, the Wake County Department of Human Services (WCHS) filed a petition alleging that Dylan was a neglected and dependent juvenile. WCHS alleged that Respondent had moved to Texas after placing Dylan with non-relatives in South Carolina. Dylan's maternal aunt went to South Carolina and brought Dylan back home with her to North Carolina for the 2015 Christmas holiday. The aunt did so with the understanding that Respondent would bring Dylan back to Texas with her after visiting Dylan and the aunt in North Carolina.
On 30 December 2015, Respondent informed the aunt that she would not pick up Dylan due to financial difficulties. At the time, the aunt was undergoing cancer treatment, and Respondent was aware of the aunt's inability to provide long term care for Dylan. When WCHS contacted Respondent to make arrangements for Dylan's care, Respondent made several statements that she would pick up Dylan in January, then February, and then said she would have to wait until March to be able to financially meet the child's needs.
WCHS conducted a family assessment and learned that Dylan was not enrolled in school nor receiving any medical and mental health services. The aunt expressed concerns about Dylan's health due to his frequent urination, constant thirst, and family history of diabetes. She also reported that Dylan had frequent night terrors, hoarded food, and stole items within her home. The aunt, however, was unable to provide or obtain medical and mental health services for Dylan while he was in her care.
WCHS further alleged that family members had reported concerns about Respondent's instability since Dylan's birth. They reported that Respondent had often left Dylan with non-relatives and had not been accessible to meet his needs. Family members also expressed concerns about Respondent's mental health and stated she had been hospitalized and received medication and therapy as a child. WCHS detailed a 2015 incident in Texas in which Respondent was belligerent toward police officers, threatened to kill people, and was taken to the hospital. WCHS stated that Respondent had previous criminal charges for multiple simple assaults, assault on a government official, communicating threats, resisting a public officer, injury to personal property, and simple affray.
Based on these allegations, WCHS asserted that Respondent was unable to care for Dylan, that Respondent had not provided for an appropriate alternative caregiver, and that Dylan's father was unknown. WCHS obtained non-secure custody of Dylan and, on 13 June 2016, the trial court adjudicated Dylan as neglected and dependent. The trial court ordered that custody remain with WCHS and that Respondent regularly visit with Dylan.
On 6 December 2017, WCHS filed a petition to terminate Respondent's parental rights on the grounds of neglect, willful failure to make reasonable progress to correct the conditions that led to removal, and abandonment.[2] On 18 June 2018, the trial court entered an order terminating Respondent's parental rights on the grounds of neglect and willful failure to make reasonable progress under N.C. Gen. Stat. § 7B-1111(a)(1) and (2). Respondent appealed.
Analysis
I. Grounds for Termination
Respondent first argues that the trial court erred by concluding that grounds existed to terminate her parental rights. We disagree.
N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support termination. In re P.L.P. , 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005).
"The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D. , 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005). We review the trial court's conclusions of law de novo . In re S.N. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), aff'd per curiam , 363 N.C. 368, 677 S.E.2d 455 (2009).
Here, the trial court concluded that grounds existed to terminate respondent's parental rights based on neglect. N.C. Gen. Stat. § 7B-1111(a)(1). A "neglected juvenile" is defined as:
Any juvenile less than 18 years of age (i) who is found to be a minor victim of human trafficking under G.S. 14-43.15 or (ii) whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; ... or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15). Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child at the time of the termination proceeding." In re L.O.K. , 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (citation omitted). But where, as here, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id. at 435, 621 S.E.2d at 242. "In those circumstances, a trial court may find that grounds for termination exist upon a showing of a history of neglect by the parent and the probability of a repetition of neglect." Id.
In the order terminating Respondent's parental rights, the trial court made extensive findings regarding the events which led to Dylan being placed in foster care in February 2016, and found that the trial court adjudicated Dylan a neglected juvenile. The trial court found that Respondent was ordered to take the following steps to effect reunification: comply with the Visitation Agreement to regularly visit Dylan; obtain and maintain safe, stable housing and income sufficient for herself and Dylan; complete a psychological evaluation and comply with any recommendations; complete Positive Parenting or equivalent parenting education and demonstrate skills learned; maintain regular contact with the social worker at WCHS and notify the social worker of any change in situation or circumstance within five business days.
The trial court then made lengthy, detailed findings of fact supporting its ultimate finding that Dylan was neglected while in Respondent's care and that this neglect would continue in the future if Dylan were returned to Respondent's custody. Respondent does not challenge these findings of fact, and thus they are deemed supported by competent evidence and are binding on appeal. Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).
Respondent claims that, notwithstanding these unchallenged findings, the trial court disregarded her efforts to comply with the orders of the court, including efforts to maintain housing and employment and attend therapy and parenting education. She further asserts that she demonstrated appropriate parenting skills and behaviors during visits with Dylan. Thus, she argues, the trial court erred when it found there would be a high likelihood of repetition of neglect should Dylan be returned to her care. We reject this argument.
The trial court's unchallenged findings of fact demonstrate that, despite Respondent's arguments to the contrary, she did not have stable housing, she was not fully exercising her rights to visitation with Dylan, there continued to be issues with her mental health and parenting skills, and she was not in compliance with the trial court's dispositional order, which was designed to achieve reunification. See In re Whisnant , 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). Additionally, Respondent's attempts to comply with the trial court's orders were recent and minimal at best. Most importantly, as found by the trial court, she failed to take responsibility for Dylan's neglect and instead blamed others. This failure to take responsibility, combined with only limited progress in her case plan, provides ample support for the trial court's ultimate finding that Dylan was likely to suffer a repetition of neglect if returned to Respondent's custody. Accordingly, we hold that the trial court did not err in terminating Respondent's parental rights on the ground of neglect.
Because we find that termination was proper on the ground of neglect, we need not address the other ground found by the trial court. P.L.P. , 173 N.C. App. at 8, 618 S.E.2d at 246.
II. Best Interests Determination
Respondent next argues that the trial court abused its discretion when it determined that termination of her parental rights was in Dylan's best interest. We disagree.
After an adjudication that one or more grounds for terminating a parent's rights exist, the trial court must determine whether terminating the parent's rights is in the juvenile's best interests by considering the following criteria:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a). This Court reviews the trial court's best interests determination for abuse of discretion. In re Anderson , 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).
Here, the trial court made no specific finding as to Dylan's age during the dispositional portion of the proceeding, but it did note his birthdate in its first finding of fact. Regarding the other factors set forth in N.C. Gen. Stat. § 7B-1110(a), the trial court made the following findings of fact:
41. The conduct of [the] mother has been such as to demonstrate that she will not promote the health and orderly, physical and emotional well-being of the child.
42. That the minor child is in need of a permanent plan of care at the earliest possible age which can be obtained only by the severing of the relationship between the child and the mother by termination of the parental rights of the mother.
43. The primary permanent plan is adoption and termination of the parental rights of the mother aids in the accomplishment of the permanent plan of adoption.
44. The child has a bond with and loves his mother and would like more than anything to be able to be placed with his mother. The child doubts whether his mother will be able to provide care for him. The child is in therapy dealing with tantrums and behavioral issues that will likely stem from his anger at being left by his mother for more than two and one-half years with little contact with her.
45. The child has made statements that he is "just a foster child" [and] that he didn't deserve anything and didn't deserve to live. He suffers from low self-esteem and is struggling with a lack of permanency.
46. The child is not in a pre-adoptive home but is intelligent and personable and able to form appropriate parent-child bonds. He is [a] young, healthy adoptable child. The probability of his adoption is high.
These findings address all of the relevant statutory factors as required by N.C. Gen. Stat. § 7B-1110(a) and we find that they are fully supported by the record even if, as Respondent contends, there was some competing evidence.
Accordingly, we conclude that the trial court's findings sufficiently demonstrate that it considered the statutory factors set forth in N.C. Gen. Stat. § 7B-1110(a) and that the court's determination that it was in Dylan's best interests to terminate Respondent's parental rights was well within the trial court's sound discretion.
Conclusion
For the reasons discussed above, we affirm the trial court's order terminating Respondent's parental rights.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and ARROWOOD concur.

We use a pseudonym to protect the identity of the juvenile.

WCHS also alleged that grounds existed to terminate the parental rights of the unknown father. At the time of the hearing to terminate Respondent's parental rights, paternity remained at issue, and the parental rights of the unknown father were not addressed as part of the hearing.